IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CHRISTOPHER SMALLEY )
)
v. ) NO. 1:14-0028
)
DAMON HININGER, et al. )

TO: Honorable William J. Haynes, Jr., Senior District Judge

# REPORT AND RECOMMENDATION

By Order entered December 12, 2014 (Docket Entry No. 52), the Court referred this action to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Rule 72 of the Federal Rules of Civil Procedure, to hear and determine any pretrial issues and motions, to conduct any necessary conferences and hearings, and to submit a report and recommendation for disposition of any motion filed under Rules 12, 15, 56, and 65 of the Federal Rules of Civil Procedure.

Pursuant to the Order entered January 9, 2015 (Docket Entry No. 59), an evidentiary hearing was held before the Magistrate Judge on May 21, 2015. Set out below are the Court's findings of fact and recommendation for disposition of the action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Hardeman County Correctional Facility in Whiteville, Tennessee. On February 20,

2014, he filed this complaint pro se and in forma pauperis alleging that his civil rights were violated at the South Central Correctional Facility ("SCCF"), where he was previously confined. By an amended complaint, the plaintiff seeks compensatory, punitive, and nominal damages. See Docket Entry Nos. 48-1 and 62.

The plaintiff alleges that he was part of an inmate work crew that painted at the SCCF. He asserts that the paint crew used oil based paint but were not given respirators or masks to wear and were made to paint in areas that were not properly ventilated. He alleges that his complaints to prison officials and his requests for safety equipment were ignored and that he suffered headaches, lightheadedness, and nosebleeds while on the work crew. He further alleges that, although he was given nonprescription pain medication, the medication did not help his symptoms and that he was also not told the result of a CT scan that he underwent. The plaintiff does not specify the dates of these events or state in his complaint the specific actions taken by any prison official except to allege that he had a meeting at some point with Betty McVey who thereafter gave him goggles, gloves, and dust masks.

Named as defendants to the complaint were Damon Hininger, the CEO of Corrections Corporation of America, Inc.; Avril Chapman, the Warden of SCCF; and four SCCF officers - Daniel Sullivan, Betty McVey, Christopher Sawyer, and Matthew Bullard. After the defendants filed an answer (Docket Entry No. 45), a scheduling order (Docket Entry No. 59) was entered setting out deadlines for discovery and pretrial activity in the action. By Orders entered February 9, 2015, and February 27, 2015 (Docket Entry Nos. 62 and 67), Matthew Bullard was dismissed from the action because he was erroneously identified as a defendant, and the plaintiff's attempt to amend his

complaint naming Josh Bullard as a defendant was denied as futile. Id. The remaining defendants did not file a dispositive motion. A jury trial is demanded.

## II. FACTUAL FINDINGS

At the evidentiary hearing the plaintiff proceeded pro se and testified. TDOC inmate Vincent Edwards was produced upon the motion of the plaintiff and testified.[1] Defendants Sawyer and McVey also testified. Based on the testimony presented at the hearing and on the entire record in this action, the Court makes the following factual findings.

During 2013, the plaintiff had an inmate job at the SCCF on a work crew that painted different areas of the facility. He testified that on December 13, 2013, after being in the paint crew for approximately one to one and a half years, he stopped working on the paint crew. Inmate Edwards was also a member of the paint crew, although it is not clear when, but he testified that he was not a part of the paint crew for very long.

During the time period when the plaintiff was on the paint crew, Defendant Sawyer was the primary supervisor, although unidentified unit managers also supervised the paint crew on occasion. While supervising the paint crew, defendant Sawyer was normally close to the work area and in direct sight of the inmates on the crew. Defendant McVey was the SCCF safety manager and oversaw the safety programs at the SCCF, including the provision of safety equipment to inmates, but had no role in directly supervising the paint crew. Defendants Hininger, Chapman, and Sullivan

---

[1] By Order entered April 27, 2015 (Docket Entry No. 86), the Court denied the plaintiff's motion to subpoena a second inmate witness.

had no personal involvement in matters involving the paint crew, and the plaintiff testified that he sued them in this lawsuit based solely upon their supervisory positions with CCA and at the SCCF.

The paint crew painted interior areas in the SCCF, including inmate cells, fixtures, and other housing and common areas. They primarily used latex based paint, but used oil based paint to paint beds, shelves, doors, and any other metal items. Defendant Sawyer estimated that 20-25% of the time spent by the crew painting involved oil based paint. All paint was applied manually using brushes and rollers. Paint sprayers were not used. Inmates on the paint crew were given safety goggles, rubber gloves, and dust masks to use while painting, although the testimony on this issue was somewhat conflicting and the plaintiff testified that there were times that dust masks were out of stock or were not available and he had to paint without a mask. The plaintiff testified that, when the inmates were out of dust masks, Defendant Sawyer made requests for more masks.

In the areas where inmates painted, doors were generally kept open, although the plaintiff testified that the doors were sometimes shut for security reasons when inmates painted in the recreation facility. When the paint crew painted in the recreation facility, the crew was not supervised by Defendant Sawyer but by a unit manager. Although Edwards' testimony was to the contrary, both the plaintiff and Defendant Sawyer testified that, when Sawyer supervised the paint crew, he provided ventilation by using the air conditioning system and a portable fan, and, if necessary, by taking steps to activate the prison exhaust fan system, which is a powerful air exhaust system that creates substantial air movement. The plaintiff testified, however, that Sawyer would not always turn on the air conditioning system or the exhaust fan system when requested.

The plaintiff testified that the fumes from the oil based paint were strong and made him suffer headaches, lightheadedness, slight nose bleeds, and migraines. He denied suffering from these

conditions prior to being on the paint crew. He testified that there were no issues with fumes from the latex based paint. The plaintiff took over-the-counter pain medication for his headaches. The plaintiff testified that he filled out sick call requests and was seen by the prison medical staff about these issues and was provided with Ibuprofen. No medical records were presented at the hearing.

While on the paint crew, the plaintiff requested that an air respirator chemical mask be provided for the inmates to wear while painting with the oil based paint. On December 3, 2013, he filed a grievance about the oil based paint vapors, ventilation issues, and his desire to be provided with an air respirator chemical mask. See Docket Entry No. 47-1. He also personally spoke to Defendant McVey on the day of his grievance. Prison officials responded to the grievance by stating that "safety equipment" was provided to the paint crew inmates. Id. However, the type of respirator requested by the plaintiff was not provided because Defendant McVey did not believe that such a respirator was necessary based upon the nature of the painting that was being done by the paint crew. Subsequent to the grievance, the plaintiff testified that he met with a prison official named Mr. Parrish and was permitted to leave the paint crew for a different prison job.

The plaintiff offered into evidence a paint can label for the oil based paint that he testified was used by the paint crew. See plaintiff's Exhibit No. 1. This label identifies the paint as an interior/exterior industrial gloss oil paint. Although the plaintiff admitted that the label was removed from a paint can after he was on the paint crew, there was no evidence that this paint was not the same type of paint that was used while he was on the paint crew. The warning section on the label on the oil based paint can states:

> USE ONLY WITH ADEQUATE VENTILATION. Wear protective equipment as
> specified on the MSDS, including a NIOSH-approved air purifying respirator with

> the appropriate chemical cartridges or a positive-pressure, air-supplied respirator until all vapors/mists are gone.

See Exhibit No. 1. The plaintiff also offered into evidence a nine page Material Safety Data Sheet ("MSDS") for the oil based paint. See Plaintiff's Exhibit No. 3. This MSDS states in Section 8 that:

> If workers are exposed to concentrations above the exposure limit, they must use appropriate, certified respirators. Use a properly fitted, air-purifying or air-fed respirator complying with an approved standard if a risk assessment indicates that it is necessary.

Id. at 5. TDOC Policy 112.03 requires that "supervisors of each work/program/vocational areas will be responsible for the enforcement of basic [Tennessee Occupational Safety and Health Act] regulations." See Plaintiff's Exhibit 4, at § VI.B. Defendant McVey testified that she had reviewed the MSDS for the oil based paint and concluded that the safety equipment provided to the paint crew was sufficient for the manner in which they were painting.

## III. CONCLUSIONS

The purpose of the evidentiary hearing is to inquire into the factual basis of the plaintiff's claims. Johnson v. Bi-State Justice Ctr., 12 F.3d 133, 135-36 (8th Cir. 1993). In making this inquiry, the Court has construed the evidence in the light most favorable to the plaintiff, has given the plaintiff the benefit of all reasonable inferences that can be drawn from this evidence, and has not made credibility determinations. After review of the evidence presented at the hearing and of the entire record in this action, the Court finds that, even when the disputed facts and all inferences are construed in the plaintiff's favor, the evidence in support of his claims is insufficient to warrant submitting the claims to a jury.

42 U.S.C. § 1983 does not confer rights upon an individual. Instead, it is a vehicle to seek a remedy for violations of constitutional rights guaranteed elsewhere. Graham v. Conner, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A plaintiff proves a claim under Section 1983 by showing that: (1) the defendant was acting under color of state law; and (2) the defendant deprived the plaintiff of rights secured by the United States Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). There is no dispute that the plaintiff has satisfied the "under color of state law" requirement. The only question is whether the Defendants violated his constitutional rights.

There is no evidence supporting a claim under Section 1983 against Defendants Hininger, Chapman, and Sullivan. The defendants cannot be held individually liable under Section 1983 for constitutional violations absent a showing that they were personally involved in some manner in the allegedly unconstitutional conduct. Miller v. Calhoun Cnty., 408 F.3d 803, 817, n.3 (6th Cir. 2005); Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Furthermore, because respondeat superior is not a basis for liability under Section 1983, the defendants' status as supervisory officials does not render them personally liable for the acts of those who work under them at the SCCF. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 371-72, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The plaintiff admits that these three defendants were not personally involved in the events regarding the paint crew, and there is no evidence that they otherwise authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct as is required for a claim against them. Therefore, there is no basis for a claim of individual liability against these three defendants. See Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264,

120 S.Ct. 2724, 147 L.Ed.2d 988 (2000); Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989).

With respect to Defendants Sawyer and McVey, the Court finds that, although they were personally involved in the events at issue, there is insufficient evidence in the record upon which a reasonable jury could conclude that they violated the plaintiff's constitutional rights. Because the Eighth Amendment does not protect against ordinary torts or claims of negligence, the plaintiff's claims require proof of a level of objective severity and subjective mental culpability that is necessary to implicate constitutional protections. To satisfy the objective prong, the plaintiff must show that he was subjected to deprivations that are of a constitutional magnitude. See Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). This requires evidence showing that there was a substantial risk of serious harm to his safety. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The subjective prong requires the plaintiff to show that the defendants knew or should have known of substantial risk to his safety and that the defendants acted or failed to act in a manner which was deliberately indifferent to this substantial risk. Farmer, 511 U.S. at 834-37; Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004). While the plaintiff is not required to show that the defendants had an actual intent for the plaintiff to be harmed, the plaintiff must show "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

Although the plaintiff presented evidence that he suffered headaches and slight nosebleeds as a result of being exposed to paint fumes from the oil based paint, and while there is clearly evidence in the form of the paint label and the MSDS that the paint fumes do present a health hazard

in certain conditions, the evidence in the record is simply insufficient to support a reasonable conclusion that the plaintiff's exposure to the oil based paint fumes was of such a nature as to create a substantial risk of serious harm to his health. He failed to show that his exposure to the paint fumes was at an unreasonably high level and or was so extreme that it could reasonably be viewed as violating contemporary standards of decency. See Helling, 509 U.S. at 35; Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Thus, the plaintiff fails to support the objective component of his Eighth Amendment claim.

Additionally, the subjective component of the plaintiffs' claim requires there to be evidence that the defendants had a sufficiently culpable state of mind, i.e., that they acted with deliberate indifference toward the risk of harm posed by the paint fumes. Farmer, 511 U.S. at 834. See also Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). However, the evidence before the Court fails to show that either Defendant Sawyer or Defendant McVey acted in this manner. Indeed, the evidence before the Court shows that both defendants acted in a manner that was not deliberately indifferent when they took steps to ensure that ventilation and basic safety equipment were provided to inmates while painting and when they acknowledged and responded to the plaintiff's complaints. To the extent that the plaintiff believes the defendants were required to provide him with an air purifying respirator, there is not sufficient evidence before the Court upon which any jury could reasonably conclude that the defendants' failure to provide him with this type of respirator was an act of deliberate indifference.

9

Prior to the hearing the plaintiff filed a motion (Docket Entry No. 84) for an order requiring the TDOC to transfer him from his current housing location to the SCCF and for the SCCF staff to place him in a job in the TRICOR program. The plaintiff contends that he was transferred from the SCCF on April 3, 2015, and that the only reason for the transfer was retaliation against him because of this lawsuit. This motion should be denied. As set out herein, the Court finds that this action warrants dismissal on the merits of the plaintiff's claims and, thus, the plaintiff has no likelihood of success on his claims, which weighs against any injunction. Further, a matter such as the housing location of a prison inmate is a matter left to the discretion of prison officials and one in which the Court will not intervene absent extraordinary and compelling justifications, which have not been shown in this action. See Overstreet v. Lexington-Fayette Urban Cnty. Govt., 305 F.3d 566, 573 (6th Cir. 2002).

## RECOMMENDATION

Based on the foregoing, the Court recommends that this action be DISMISSED WITH PREJUDICE because there are no facts upon which a reasonable jury could find in favor of the plaintiff on his claims under 42 U.S.C. § 1983.

The Court further recommends that the plaintiffs' motion (Docket Entry No. 84) for an injunctive order be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to

appeal the District Court's Order regarding the Report and Recommendation. See <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

            Respectfully submitted,

            */s/ Juliet Griffin*
            JULIET GRIFFIN
            United States Magistrate Judge